**Squire, Vandervoort & Company, Appellee, v. Martin A. Ryerson, Appellant.**

**Gen. No. 14,598.**

LANDLORD AND TENANT—*when former not liable for injury to property of latter.* *Held,* under the evidence, that the landlord was not liable to the tenant for injury to his property occasioned by leakage in the sprinkler system installed by the landlord by permission of the tenant; the action being in tort, no liability being claimed under the existing contract relation or because of faulty construction.

Squire, Vandervoort & Co. v. Ryerson, 150 Ill. App. 255.

Tort. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1908. Reversed with finding of fact. Opinion filed October 7, 1909.

**Statement by the Court.** The parties to this litigation sustain to each other the relation of landlord and tenant. Defendant leased, by an indenture under seal, to C. M. Henderson & Company, the fourth and sixth floors of 192 and 194 Market street, being part of a large building occupied by many tenants and numbered 180 to 194 Market street, Chicago, for a term commencing January 1, 1901, and expiring December 31, 1903. The evidence shows that C. M. Henderson & Company with the consent of defendant, sublet said two floors to plaintiff, who, prior to suffering the damages complained of, entered into the actual possession of said demised premises and was so in possession at and after the time of suffering such damage; that defendant, with the consent in writing of plaintiff, installed in the building of which the demised premises were a part, an automatic sprinkler system, with sundry sprinkler heads in and about the fourth and sixth floors occupied by plaintiff, which system was installed for the mutual protection of the landlord's building and the goods of the tenants against damage and loss by fire. The installation was completed in the month of December, 1902. This system consisted of pipes running from wooden tanks on the roof of the building, with four steel pressure tanks about two-thirds full of water, with a pressure of about 80 pounds of air. The pipes ran downward through the building to the ground, the sprinkler heads being placed every few feet along these pipes. The sprinkler heads were constructed with solder that was fusible at 160 degrees in hot water. At a pressure of 80 pounds, 60 or 70 gallons of water a minute would be discharged from each sprinkler head. During the night of July 29, 1903, or early in the morning, while the premises of plaintiff were closed, a sprinkler head located in the ceiling of the sixth floor of plaintiff's

premises opened and deluged the premises of plaintiff and damaged its goods to the amount of $1192.75, the amount of the verdict and judgment. The cause of the opening of the sprinkler valve which resulted in the damage seems to have been the giving away of the solder, which caused the links of the sprinkler head to draw apart, opening the valve from which the water flowed.

The action is tort and is grounded, both by averments of the declaration and arguments of plaintiff's counsel in their briefs, on a duty which defendant owed plaintiff after installing the sprinkling system to maintain it in good order and to use reasonable care so to do, and that the damage resulted from defendant's neglect to discharge such duty. The inspection made by defendant was confined to a daily examination of the system from the roof to see that the proper pressure was maintained, and an examination of the sprinkler heads from the floor by defendant's engineer about twice a week. Plaintiff contends that such duty was not discharged by such a limited examination, but should have extended to a careful and thorough examination of the system in all its parts.

Plaintiff did not put its lease in evidence, and now contends that liability is not predicated upon any covenant of the lease, but arises by implication of law, and that after the installation of the sprinkler system the law cast upon defendant the duty of such thorough inspection and care that such an accident as that which happened and damaged plaintiff's goods would not have occurred.

That there may be no uncertainty as to the attitude and claims of plaintiff, we quote from its counsel's brief the following:

"II. Appellee makes no claim that under any lease was appellant required to instal or maintain the sprinkler device".

"III. Appellee's claim is that after granting permission to appellant to enter upon the demised premi-

ses occupied by appellee, for the purpose of installing the sprinkler system, appellant assumed the construction and maintenance of that system. It was therefore the duty of appellant to keep and maintain the system in good order, so that it would not injure the goods of appellee''.

''IV. In order to keep and maintain the system in good order, it was necessary to maintain an inspection sufficient to discover defects that would cause the sprinkler head to open and allow the water to flow. Appellant did not maintain such an inspection and did not discover the defect which caused the damage''.

Defendant, meeting this contention of plaintiff, insists that no cause of action is stated in the declaration; that the law imposes no such duty upon defendant, and that such duty, if any, must rest in a contractual relation between parties, and not being a duty imposed by law, no recovery can be had in a tort action.

Numerous assignments of error appear upon the record, but we shall confine our solution of the conflict to a decision of the one controlling question, the ground upon which plaintiff bases its right to recover, viz: Whether the law cast upon defendant, after installing the sprinkler system, the duty of inspecting and keeping the same in such condition that the difficulty which developed to the damage of plaintiff would not have occurred.

FRANK HAMLIN and HERRICK, ALLEN, BOYESEN & MARTIN, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, for appellee; EDWARD W. EVERETT and WALTER H. JACOBS, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff argues under point 1, subdivision a, that it ''makes no claim for damages caused by the negligence

of the contractor who installed the system. The claim is for the negligence of appellant after the system has been installed and in use for a considerable length of time, and for his failure to use reasonable care in inspecting and repairing defects''. This would seem to eliminate from the case questions which might otherwise arise, as to damage resulting from faulty construction, or as to the employment of an independent contractor, which operated to exonerate the landlord for negligent construction by such contractor; so that the liability, if any, must be predicated, as frequently iterated by counsel for plaintiff in their brief, upon an obligation to inspect and maintain the sprinkler system in good order, imposed by law. It is therefore clear that if plaintiff's contention in this regard is sound, neither the lease nor contract under which the landlord entered plaintiff's premises and installed therein the sprinkler system has any relevancy. This attitude is, we think, feasible from the further fact that the action is tort and not founded on the contractual relation of the parties.

The sprinkler head which caused the trouble was on the ceiling of the sixth floor, immediately back of the passenger elevator. The cause of the flow of water from the sprinkler head seems to have been the gradual disintegration or crawling of the solder in the link. Rice, the expert, testified on this point in substance that two parts of the link at the end of the lever are soldered together; that the defective head separated and pushed apart; that the solder does not hold the two parts of the link together securely; that they push apart or "crawl" and release the tension on the gauge, holding the water cavity, allowing it to leak; that the solder should melt and the parts draw apart when there is a sufficient degree of heat to fuse, to allow it to open as it should have done in case of fire; that there was no way of telling that the solder was soft or creeping except by a minute examination; that such a condition could not be ascertained from the floor. The sprinkler head, so far as we are able to judge from the

evidence, gave no evidence of being out of order from the time it was installed in December, 1902, until in the night of July 29, 1903, when, in the absence of plaintiff and its employes, the water burst through the sprinkler head. The defect must have been latent and not ascertainable except from a critical examination of all its parts. Such is the trend of the testimony. The most important object of inspection was to keep air pressure at all times of sufficient volume, so that in case of fire the solder holding the links in the sprinkler heads would fuse and precipitate water in the ample quantity which was intended when the apparatus was installed. This was done, and the inspection of the sprinkler heads was from the floor. Had the "crawling" of the solder been gradual, such condition would have been made manifest by a leak from the sprinkler head. No leak was discernible at the time plaintiff closed its place on the evening preceding the accident. In view of these facts a final analysis of plaintiff's contention leads to the conclusion that the claimed duty of defendant, cast upon him by law, was to so scrutinize the sprinkler heads that by no misadventure could they become out of order and cause damage to plaintiff. This would practically impose upon defendant the liability of a guarantor of the absolute integrity of the apparatus at all times. We are unable to find any law which in these circumstances imposes any such duty upon a landlord.

The cases to which counsel for plaintiff has cited us do not, in our judgment, have any application to the facts in this record. The cases of damage from water under the exclusive control of the landlord all resulted from the neglect of the landlord's duty which he owed to the tenant under the contractual relationship existing between them. The cases of damage resulting from negligent conduct of a contractor while engaged in repairing demised premises for the landlord, while the landlord was upon such demised premises through such contractor for that purpose, is not by analogy akin to the case at bar, for in this case no damage oc-

curred while the contractor was installing the sprinkling system, and not until more than seven months thereafter, and then through a latent defect not discoverable by an ordinary and usual inspection. We see no reason to differ with the rule cited to us by counsel for plaintiff from 18 Am. & Eng. Ency. of Law. 219, that "A landlord is liable to a tenant for injuries to the latter arising from any culpable negligence of the landlord in the use of the portion of the building retained under his control. This liability does not arise especially out of the relation of landlord and tenant, but is based on the broad principle that one must not so negligently use his property as to cause injury to a third person"; but the facts of this case in no wise bring it within the scope of such rule. No culpable negligence of defendant in relation to the sprinkling system or its management is inferable from the proofs, and certainly no negligent use of it which in the remotest degree can be said to have contributed to the precipitation of water from the sprinkler head, which caused the damage complained of to plaintiff's property. We cannot say that the accident was brought about by a failure of defendant to do any act which the law imposed upon him as a duty. We think the defendant's engineer's account of his method of inspection was sufficiently thorough to meet every legal requirement, and this is quite apparent and convincing when coupled to it is the testimony of Rice, the expert, that "to constitute an inspection of this system it would be necessary to make an examination of the tanks, valves and pipes through the different floors of the building; an examination of the sprinklers such as could be made by walking through and looking at them from the floor"; also that "the commencement of that pulling away could not easily be noticed by an inspection. It is possible to do so if it had been gradual and slow; it could by close inspection, not by an examination from the floor". The evidence last quoted is verbatim from plaintiff's brief. We have no misgiving but that the inspection of defendant's engineer

fully met the requirements announced by Rice as sufficient.

The declaration under which the cause proceeded to trial does not state facts which affimatively show that the duty of defendant imposed upon him by law was to keep the whole of the sprinkling system installed on plaintiff's premises in such safe condition as to make him liable to respond to plaintiff for damages resulting from any part of it getting out of order. Nor do we find any evidence in the record from which such a liability can be fastened upon defendant.

The judgment of the Circuit Court is not sustained by either the declaration or the proofs, and it is therefore reversed with a finding of fact.

*Reversed with finding of fact.*